Bessette *v.* The State.

Filed March 14, 1885.

---

No. 12,027.

## BESSETTE *v.* THE STATE.

WITNESS.—*Cross-Examination.—Practice.*—It is proper, on cross-examination, to propound questions showing the character and antecedents, and exhibiting the motives and interest, of a witness, for the purpose of affecting his credibility; but specific acts of immorality or misconduct of a witness can not be proved for the purpose of discrediting his testimony.

SAME.—*Discretion of Court.*— The extent to which a cross-examination may be carried is ordinarily a matter resting in the sound discretion of the trial court.

CRIMINAL LAW.—*Rape.—Locus of Crime.—Evidence.*—In a prosecution for rape committed upon a female child under the age of twelve years, where the prosecuting witness testified on her examination before a justice, that the crime was committed in a certain field, but on the trial of the cause in the circuit court testified that it occurred in the defendant's barn, it is error to reject evidence tending to show the motives inducing the change of the *locus* of the crime.

SAME.—*Prosecuting Attorney.—Argument of Counsel.*—It is the duty of the trial court to control and direct the argument of counsel; and where the prosecuting attorney is permitted, over objection, to comment on the personal appearance of the defendant, not as a witness, nor on account of his manner and bearing as such, but as indicating a probability of guilt, or to refer to a particular juror as having become prejudiced in the case, it is such error as will reverse the judgment.

From the Benton Circuit Court.

*D. Smith, R. P. Davidson* and *J. C. Davidson,* for appellant.
*F. T. Hord,* Attorney General, for the State.

MITCHELL, J.—The appellant was convicted in the court below of having made an assault upon, and of having had carnal knowledge of, Lenora Bessette, a female child under the age of twelve years.

The conviction rests wholly upon the testimony of the prosecuting witness, who was the daughter of the appellant's brother.

It appeared that the brother and his wife had separated for some cause, undisclosed in the record, and that his wife was living, presumably in wedlock, with one LaBarge, and that her daughter, the prosecutrix, was also a member of LaBarge's family, he assuming the relation of step-father to her.

The evidence tended to show that the alleged offence was perpetrated about nineteen months before any information of the fact was given by the prosecutrix to any one. After the lapse of that period, the evidence tended to show that the prosecutrix and her step-father, LaBarge, went to the office of the prosecuting attorney, when, after consultation, an affidavit was prepared charging the appellant with the offence, and concurrently with the commencement of the criminal proceeding, a civil suit was instituted by her in the Benton Circuit Court for damages, LaBarge being named as her next friend.

After the examination before the justice, the grand jury of the county returned an indictment against the appellant for the same offence which was charged in the affidavit, and upon the indictment so found this trial was had.

The evidence tended to show that upon the examination of the criminal charge had before the justice of the peace, the prosecutrix testified that the offence against her person was perpetrated by the appellant on the 10th day of May, 1882, in a certain field in which he was plowing, and that nothing was said or claimed by her at that examination as to any other similar occurrence, at any other time or place.

In her direct examination in this case, she abandoned the alleged occurrence in the field, saying nothing whatever about it, and testified that the abuse of her person occurred on a Sunday in May, 1882, in the appellant's barn, she having gone thither with him and two of his children, one of whom, a girl, was near her own age, to assist in watering the horses.

Having thus apparently changed her base, as to the place where the alleged offence was perpetrated, the appellant's counsel sought to develop the theory that the change was induced by the fact that a full view of the field in which she first testified the act occurred was commanded by the appellant's and also by a neighbor's house, and also by the fact that it could be made to appear that the appellant's hired man had plowed the field in the May referred to, and that the appellant had not plowed in that field at all at the time first laid.

The appellant, by his counsel, also undertook in the cross-examination of the prosecutrix to develop the theory that the relations between her and her step-father were of an improper character; that they were depraved in their conversation and conduct with each other, and that both the criminal and civil prosecutions were the result of a conspiracy between the two to extort money from the appellant.

As tending to support that theory, the prosecuting witness was asked on cross-examination whether she had not, on an occasion when absent from home with her step-father, occupied the same bunk with him; and whether or not she had not told persons, whose names were given, that her step-father had told her about matters relating to the begetting of children and commerce between the sexes, and other matters, which

indicated, if true, an utterly debased and depraved condition of mind in both. She was also asked questions tending to show, or implying, that she had been led to expect a pecuniary advantage on account of the several prosecutions commenced against the appellant, and implying that she had been induced to commence the prosecutions by her step-father, in the hope or expectation of some such benefit.

These questions, and all others of like character, were, upon objection by the State, held to be improper, and these rulings of the court are complained of as erroneous.

The extent to which a cross-examination may be carried, in the direction indicated by the questions, is ordinarily a matter resting in the sound discretion of the *nisi prius* court.

The rule that specific acts of immorality or misconduct of a witness can not be proved for the purpose of discrediting him, is well settled and is not to be infringed upon, but that rule is not involved in the question under consideration. The question here is as to the extent to which a cross-examination of a witness may go, when the object of it is to impair his credibility by questions tending to show the motives or interest under which his testimony is given, or that he is depraved in character, or that his habits and antecedents are immoral and infamous. These are ordinarily collateral to the main inquiry, and can not become the subjects of independent proof from other witnesses, except in the manner provided by statute.

It is proper within the bounds of propriety, to be controlled by the trial court, that the character and antecedents of a witness may be subjected to a test on cross-examination, and that questions which go to exhibit his motives and interest as a witness, as well as those tending to show his character and antecedents, should be allowed. Wharton Ev., sections 544, 545; *Johnson* v. *Wiley*, 74 Ind. 233; *Wilbur* v. *Flood*, 16 Mich. 40; *Commonwealth* v. *Bonner*, 97 Mass. 587.

The appellant also sought to introduce evidence tending to prove the situation of the field in which the prosecutrix,

on her first examination, testified that the offence was perpetrated, and that his hired man had plowed the field, with a view of presenting the theory to the jury that the change in the *locus* of the crime was induced by the fact that she would be confronted with evidence tending to show the improbability of its having been committed there at all. This evidence was also excluded, and we think improperly.

It was the clear right of the appellant, having shown that the prosecutrix at first laid the injury as having occurred in the field, to show that a view of the field was so commanded by his own and neighboring houses as to render it highly improbable that the offence could have been committed there, and also to show that his hired man had plowed the field, and that he had not plowed it, as these facts would have tended to show a motive for making the change in her testimony.

A bill of exceptions in the record shows that during his closing address to the jury, the prosecuting attorney, in speaking of the accused, who had testified in his own behalf, used the following language: " Luke Bessette has a bad looking face; I ask you to just look at his face; you have a right to look at his face, and I have the right to ask you to look at his face, and as prosecuting attorney I have a right to comment upon it; if his face does not show him to be a bad man, then I am not a good judge of the human countenance."

To these remarks the appellant's counsel objected, and protested that they were improper. So far as the bill of exceptions shows, no notice was taken of the objection and protest of counsel by the court. After other remarks by the prosecutor, which are set out in the bill of exceptions and which were objected to, the bill contains the following, as part of the prosecutor's speech to the jury: " The defendant's attorneys have endeavored to humbug you into the belief that this case was set on foot for money; that this is a blackmailing scheme. The defence has already succeeded, perhaps, in making a young man on the jury believe that this is a blackmailing scheme. I think I know who he is, and I think he

has become greatly impressed with that theory." The bill of exceptions continues as follows: "To which language, and to alluding to any one of the jurors, the defendant at the time attempted to object, but the court having intimated that there should be no more interruptions by counsel, the objection was not noticed either by the court or prosecuting attorney."

The remarks indulged in by the prosecuting attorney, having reference to the personal appearance of the accused, not as a witness, nor on account of his manner and bearing as such, but relating to his personal appearance as an accused person before the bar of the court, can not be justified.

The personal allusion made to the probable state of mind of one of the jurors was yet more reprehensible. To be thus singled out from his fellow jurors, and put under surveillance, was well calculated to impair the independence of mind and judgment which it was the right and duty of the juror to maintain, until convinced by the evidence and the fair and legitimate argument of counsel.

It is the duty of the *nisi prius* court to control and direct the argument of counsel in the interest of justice, and when the prosecutor unconsciously, or, perhaps, from want of experience, went so far outside of the circle of fair debate as to attempt to degrade and humiliate the defendant, by arraigning him for his personal appearance and characteristics while he was by the compulsion of the court at its bar, it was the duty of the court to interfere for his protection.

Manifestly, this court can lay down no rule on the subject, and it will not in any case be presumed that the discretion committed to the trial court has been abused; yet, when it appears that harm may have come to a party by reason of a probable mistake on the part of the court in failing to act at all, when its intervention was necessary, as seems to have been the case here, this court will not hesitate to reverse.

It may sometimes happen, as for aught we know was the case in this instance, that in his zeal to do his duty the bounds of propriety may be unwittingly overstepped by an inexpe-

rienced prosecutor, and while it would be a most ungracious task for this court to say anything which would in any degree suppress the highest enthusiasm of forensic effort in behalf of the State, or in any case at the bar, it should be remembered that fair, open debate, rather than a resort to questionable expedients, will best subserve the ends of justice.

To arrive at the exact truth and justice of the case according to the facts and the law should be the aim of all forensic strife, and to this end the utmost power of logical reasoning and deduction or proper illustration may be employed. To master and put them under contribution are the marks of the accomplished advocate.

It is not without regret that the court feels obliged to say this much, but looking at the whole record in this case, and considering that a conviction of the appellant was had on the not entirely consistent testimony of one unsupported witness, we feel constrained, lest injustice may have been done, to reverse the judgment, not so much upon any one, as upon all the questions which are made in the record, taken together.

Judgment reversed, with directions to the clerk to make the proper order upon the warden of the prison.

Filed April 3, 1885.