O'Brien *v.* The State.

No. 15,163.

## O'Brien *v.* The State.

JURISDICTION.—*Court of General Jurisdiction.*—*Presumption as to.*—Where a court is a court of general jurisdiction, and it does not appear from the record that it was without jurisdiction, the Supreme Court will presume in favor of its jurisdiction.

SAME.—*Empanelling of Grand Jury.*—*Presumption Concerning.*—*Transcript.*—*Indictment.*—*Change of Venue.*—*Degree of Certainty in Criminal Procedure.*—Where it affirmatively appears in the record, and also by recital in the copy of the indictment which it contains, that the indictment was returned by a grand jury of Huntington county, the presumption must be that it was a legally empanelled grand jury, and the circuit court of the county to which the cause was taken on a change of venue will not be deprived of jurisdiction on the ground that there is nothing in the transcript nor the copy of the indictment to show that the grand jury was duly empanelled. Reasonable certainty is all that is required under our code of criminal procedure.

GRAND JURY.—*Irregularity in Organization of.*—*Waived by Plea of Not Guilty.*—Where, after the return of the indictment, and before asking that the venue be changed, the defendant entered his plea of not guilty, he thereby waived any irregularity in the organization of the grand jury.

CHANGE OF VENUE.—*From County.*—*Criminal Case.*—*Duty of Clerk in Making up Record.*—*Presumption as to.*—*Jurisdiction of Court.*—*How Questioned.*—Where a change of venue from the county is taken in a criminal cause, the statute makes it the duty of the clerk of the court where the cause originated to make a transcript of the proceedings had in that court, and to seal it up, together with the original papers, and deliver the same to the sheriff of his county, whose duty it is to deposit the package in the clerk's office of the county to which the change of venue is taken. When such transcript has found its way to the court to which the venue has been changed, it must be presumed that it did so in the manner prescribed by law, and the contrary not appearing, it must be presumed that the original papers accompanied the transcript. If such was not the case, it was incumbent on the defendant to make that fact affirmatively appear in order to raise the question of jurisdiction.

EVIDENCE.—*Criminal Law.*—*Identification of Defendant.*—*Forcible Examination of His Person.*—*Party Making May Testify.*—The defendant, while in jail in another State, was visited by A. to ascertain if he was the person named in the indictment, and if so to take steps for his removal to Indiana to answer to said indictment. He requested permission of the defendant to make an examination of his body for certain marks or

O'Brien v. The State.

scars thereon, for the purpose of identification, and the defendant refusing to grant the request, he was hand-cuffed and the proposed examination made forcibly and against his will.

*Held*, that it was competent for the party making said examination to testify on the trial of the defendant as to the marks and scars which he claimed to have discovered in said examination, and that the testimony did not fall within the constitutional inhibition, that "No person, in any criminal prosecution, shall be compelled to testify against himself.'

From the Wells Circuit Court.

*J. B. Kenner, A. N. Martin, E. C. Vaughn, L. Mock, A. Simmons* and *J. I. Dille*, for appellant.

*L. T. Michener*, Attorney General, *W. A. Branyan*, Prosecuting Attorney, *J. C. Branyan, C. W. Watkins* and *O. W. Whitelock*, for the State.

BERKSHIRE, C. J.—This prosecution originated in the Huntington Circuit Court, and upon the appellant's motion the venue was changed and the prosecution carried to the Wells Circuit Court.

In the latter court the appellant was placed upon trial and convicted of the crime of involuntary manslaughter, and from the judgment of the court he appeals.

Several errors are assigned, but in the briefs filed for the appellant but three questions are discussed, and these are all that we are called upon to consider.

The questions are :

1. Had the Wells Circuit Court jurisdiction of the subject-matter of the prosecution ?

2. Was there sufficient evidence to support the judgment of the court ? and,

3. Did the court err in the admission of certain testimony offered on the trial in behalf of the State.

The Wells Circuit Court is a court of general jurisdiction, and as it does not appear from the record that it was without jurisdiction, this court will presume in favor of its jurisdiction. *Passmore* v. *Passmore*, 113 Ind. 237.

The foregoing would seem to be a sufficient answer to the

first objection raised, but we may further state that it appears from the record that, on the 15th day of April, 1889, a certain transcript was filed in the clerk's office of the Wells Circuit Court, which is copied into the record at length.

This transcript purports to contain the proceedings had in the Huntington Circuit Court in a certain criminal action in the name of the State of Indiana vs. James O'Brien, and discloses that at the March term, 1889, of said court, its grand jury returned into open court an indictment, which is copied in full into the record.

The indictment, as copied, recites that it is a presentation by the grand jurors in and for the county of Huntington, State of Indiana, against George Delvin, James O'Brien and Henry Stinebrenner for the crime of murder, and purports to be signed by the prosecuting attorney for the Huntington Circuit Court, and has upon it the proper endorsements.

The transcript is duly certified by the clerk of the Huntington Circuit Court.

It is contended that the transcript does not state, nor the copy of the indictment therein found recite, that the grand jury who returned the indictment were duly empanelled, and as it does not that the presumption is that they were not, and hence the court was without jurisdiction. There is nothing in this objection. Reasonable certainty is all that is required under our code of criminal procedure. Sections 1755 and 1756, R. S. 1881 ; McCool v. State, 23 Ind. 127.

It appearing affirmatively in the record, and also by recital in the copy of the indictment which it contains, that the indictment was returned by a grand jury of Huntington county, the presumption must be that it was a legally empanelled grand jury.

In this connection we may say further that after the return of the indictment, and before asking that the venue be changed, the appellant entered his plea of not guilty, thereby waiving any irregularity in the organization of the grand

jury.  *Powers* v. *State*, 87 Ind. 144 ;  *Ford* v. *State*, 112 Ind. 373.

But it is further contended that the statute requires when the venue is changed in a criminal prosecution that the original papers on file in the court granting the change shall be filed in the clerk's office of the court to which the venue is changed ; that the record does not show that this was done, and, therefore, it must be assumed that the original papers were never filed in the clerk's office of Wells county, and the conclusion must follow that the Wells Circuit Court was without jurisdiction.

Let it be conceded that if the original indictment had not been filed in the clerk's office of the Wells Circuit Court it had no jurisdiction, the state of the record is not such as to lead us to the conclusion that the indictment had not been properly filed.

The statute does not require that a record shall be made of the fact of the filing of the indictment, and hence the State can not be prejudiced because there is no such record. The statute made it the duty of the clerk of the Huntington Circuit Court to make a transcript, such as we find in the record, of the proceedings had in that court, and to seal it up, together with the original papers, and deliver the same to the sheriff of his county, whose duty it was to deposit the package in the clerk's office of Wells county.  When this was done the Wells Circuit Court had jurisdiction.  Sections 1771 and 1772, R. S. 1881.

The transcript seems to have found its way to the Wells Circuit Court, and we must presume that it did so in the manner prescribed by law, and the contrary not appearing, we must presume that the original papers accompanied the transcript.  We are bound to presume that public officers do their duty until the contrary is made to appear.  Authorities, *supra ;*  *Leslie* v. *State*, 83 Ind. 180 ;  *Duncan* v. *State*, 84 Ind. 204 ;  *App* v. *State*, 90 Ind. 73 ;  *Bright* v. *State*, 90 Ind. 343.

If the original papers had not been filed in the Wells Circuit Court it was incumbent on the appellant to make that fact affirmatively appear; the fact was susceptible of proof, which was necessarily at hand, and could have been introduced without hardship or even inconvenience to the appellant.

From a careful consideration of the evidence we are of the opinion that it fully supports the verdict of the jury.

That a felonious homicide was committed there can be no question; the controverted question is as to whether the appellant participated in the commission of the crime. He introduced evidence tending to prove an *alibi.* We are not favorably impressed with the testimony which he introduced to support this theory of his defence.

We come now to the consideration of the last question presented for our consideration.

William Delvin was called and examined as a witness on behalf of the State. The appellant was in jail in the town of Ashland, State of Wisconsin. The witness and one Rosebraugh were sent there to ascertain if the appellant was the James O'Brien named in the indictment, and if so to take steps for his removal to Huntington connty to answer to said indictment.

When the witness and Rosebraugh arrived at the jail where the appellant was confined, in the presence of the jailer, they requested of the appellant permission to make an examination of his body for certain marks or scars thereon to be found if he was the person accused in said indictment as James O'Brien, and the appellant refusing to grant the request, he was hand-cuffed and the proposed examination made forcibly and against his will.

It was as to the marks and scars which the witness claimed to have discovered from said examination that the State proposed to have the witness testify.

To the offered testimony the appellant objected, stating several grounds of objection, but as none of them were suf-

ficiently specific, save one, to present any question for our consideration, we shall confine ourselves to the question presented.

It is contended that the proposed testimony was within the inhibition found in the last clause of section 14 of article 1 of our State Constitution, which reads as follows:

. "No person, in any criminal prosecution, shall be compelled to testify against himself."

We are not called upon to decide whether or not the court could at the trial, or anterior thereto, have compelled the appellant to submit to an examination that the information thus obtained might be used as evidence against him on the trial, and express no opinion upon that question. But for a learned discussion of the question, *pro* and *con*, see *State* v. *Ah Chuey*, 14 Nev. 79 (33 Am. Rep. 530, and note) ; *Blackwell* v. *State*, 67 Ga. 76 (44 Am. Rep. 717) ; *Stokes* v. *State*, 5 Baxt. 619 (30 Am. Rep. 72). Nor was the testimony offered as to information obtained to be used upon the trial, but, as we have already seen, with a view to the appellant's arrest.

The question of duress and its effect upon information thereby obtained is not involved, because the facts to which the witness was called to testify did not depend upon a confession made by the appellant, nor upon any act of his; the marks and scars upon the body had no relation to the force used to enable the witness to find them.

The case is much like the examination of a person under arrest, for concealed weapons with which he could have committed the crime of murder of which he is accused, or for stolen property, when he is accused of larceny, and the right to examine the person of the accused for such purpose has never been questioned.

The conclusion can be reached that the offered testimony was within the constitutional prohibition only upon the theory that the witness was the mere mouth-piece, and that the appellant was the real witness, which would be a strained

construction of the constitutional provision when applied to the offered testimony.

In construing the Constitution the courts should follow the ordinary import of the language employed, unless there are controlling reasons indicating that a different construction was intended.

Worcester says that the word " testify " has three definitions :

1. " To make a statement or declaration in confirmation of some fact; to bear witness."

2. " To give evidence or testimony in regard to a case depending before a court or tribunal."

3. Law. " To make a solemn declaration under oath or affirmation, before a tribunal, court, judge, or magistrate, for the purpose of proving some fact."

The last of these is from Burrill's Law Dictionary.

Webster's definition is substantially the same.

To hold that the testimony of the witness was incompetent would compel us in every case involving the identity of a person accused of crime to hold that testimony as to marks and scars hidden under the clothing which he wears is inadmissible if the information of the witness was obtained without the consent of the accused, no difference under what circumstances or in what manner obtained. The text-books throw but little light upon the question under consideration, and yet we are not entirely without authority. *State* v. *Garrett*, 71 N. C. 85 (17 Am. Rep. 1) was an indictment for murder. The prisoner was charged with the murder of Almira Garrett. The prisoner, while under arrest and very much agitated, before the coroner, and after the jury had rendered their verdict against her, in their presence, was ordered by the coroner to unwrap her hand, which she alleged had been burned, and show it to Dr. Walker, so that it might be seen if it had been burned or not. This she did, and there was no indication of any burn upon it. This evidence was objected to on the trial by counsel for the pris-

oner, because it was in substance compelling the prisoner to furnish evidence against herself.

The court says : " The prisoner objected to the admissibility of the evidence as to the condition of her hand, and relied upon the case of *State* v. *Jacobs,* 5 Jones, 259. The distinction between that and our case is that in the Jacob's case, the prisoner himself, on trial, was compelled to exhibit himself to the jury, that they might see that he was within the prohibited degree of color, thus he was forced to become a witness against himself. This was held to be error. In our case, not the prisoner, but the *witnesses,* were called to prove what they saw upon inspecting the prisoner's hand, although that inspection was obtained by intimidation." The court then holds that there was no error. See *State* v. *Graham,* 74 N. C. 646 (21 Am. Rep. 493). The syllabus of that case is as follows :

"An officer, who had arrested a prisoner charged with larceny, compelled him to put his foot in a track found near where the larceny was committed, and testified as to the result of the comparison. Held, that the evidence was not procured by duress and was admissible."

In *Walker* v. *State,* 7 Texas Ct. App. 245 (32 Am. Rep. 595) " the first error assigned is (says counsel for the appellant) that the court should not have allowed George Grimes to testify as to the result of a comparison between tracks found near Munroe's house and a track which the defendant was compelled to make while under arrest. If the defendant ' shall not be compelled to give evidence against himself' (Bill of Rights, section 10), how can he be compelled to put the State in possession of any fact which the State says goes to establish his guilt ? "

The court, in that case, says : " There is but a single bill of exceptions exhibited in the record, and this was saved to the admission in evidence of proof with regard to foottracks made by defendant in Judge Joiner's office whilst he was under arrest. Just after the discovery of Maj. Mun-

roe's murder, some parties present commenced examining for any signs or evidence left by the perpetrator at the house and around the premises. Footprints were found in the house, at a window, and in a peach-orchard, which were measured by the witnesses, one of whom was George Grimes. The portion of his testimony which was objected to on the trial was as follows : ' I saw the same measure applied to a track in Judge Joiner's office at Bremond. Joiner made the defendant make his track in the ashes and sand in his office, where a stove had been. The impression made was plain, and it was about the same as tracks made in Munroe's house. The measure was applied to the footprints in Joiner's office, and it was the same in every particular—fitted it exactly.' It is contended that the evidence was incompetent, and inadmissible, because it was evidence which defendant was compelled to make and give against himself, in contravention of the tenth section of the Bill of Rights, article 1 of the Constitution, which declares that one accused of crime shall not be compelled to give evidence against himself."

The court then copies lengthily from the opinion in the case of *State* v. *Graham, supra,* and upon the reasoning and conclusion in that case affirms the judgment.

We find no error in the record.

Judgment affirmed, with costs.

Filed Sept. 16, 1890.