THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. BARTOLO AZPURÚA PACHECO, Defendant and Appellant.

No. 9548. Argued November 24, 1942.—Decided January 15, 1943.

R. *Rivera Zayas* for appellant. R. A. *Gómez,* Prosecuting Attorney (Fiscal), and *Luis Negrón Fernández,* Assistant Prosecuting Attorney, for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

The defendant has appealed from a judgment sentencing him to six years' imprisonment on a verdict by a jury of voluntary manslaughter.

The defendant contends that the verdict is not sustained by the evidence. We see no point in making a detailed statement of the testimony adduced at the trial. The defendant admittedly shot and killed the decedent. The government's testimony tended to show that the defendant, hiding his right hand, stealthily approached a toilet, and that several shots were heard while the accused was "half in and half out" of the toilet. The defendant admitted shooting the deceased at or about the toilet, but asserted it was done in self-defense, when the latter, after engaging in a verbal altercation with him, struck him on the arm several times with a tube which had been lying on the floor. The jury resolved the conflict in the testimony in favor of the government, and we see no reason to disturb the verdict it reached in so doing (*People* v. *Cruz,* 59 P.R.R. 569; *People* v. *Olivencia,* 54 P.R.R. 864).

■■ After the defendant had testified as to the alleged blows inflicted on him by the deceased, the district attorney took the stand in rebuttal. He testified that when he saw the defendant at the police station shortly after the killing, the latter refused to make a statement or to submit to a paraffin test, but that "in the presence of the Chief of Caguas, my stenographer Luis Pérez, Jr., and myself, I invited him to take off his clothes; he took off his coat, shirt, tie, and undershirt, and I examined him to see if I could find on him marks of any kind and found absolutely no mark on his body."

The defendant contends that this testimony of the district attorney was in substance a violation of §2 of the Organic Act (48 U.S.C.A. §737) that "no person shall be . . . compelled in any criminal case to be a witness against himself." (To the same effect, §7 of our Code of Criminal Procedure).

In making this contention, the defendant relies principally on *Reyes* v. *Municipal Court,* 41 P.R.R. 892, and *State* v. *Height,* 117 Iowa 650, 91 N.W. 935 (1902). In the *Reyes* case this court held that to compel a defendant, for purposes of attempted identification at the trial, "to dishevel his hair, throw it over his face and pull down his cap over his forehead" was violative of the privilege against self-incrimination. In the *Height* case the testimony of physicians who had made a compulsory physical examination of a defendant was held inadmissible on similar grounds.

The defendant's position is that the privilege against self-incrimination is not confined to freedom from testimonial compulsion. He argues that it also entitles him to refuse to submit to a physical inspection of a covered portion of his body, with the consequence that evidence obtained by such an involuntary inspection is barred by the privilege in question.

We could dispose of this point without further ado, in view of the failure of the defense to object to this testimony at the trial. Likewise, it would be sufficient simply to point out that the privilege, even if it exists under these circumstances, was waived in this case when the defendant, at the invitation of the district attorney, voluntarily disrobed (see *Reyes* v. *Municipal Court, supra,* at p. 896) and when he took the stand in his own defense. Furthermore, the premise on which the defendant bases his contention that the situation here is similar to that in the *Reyes* case—that the defendant was in effect testifying against himself when the district attorney took the stand as his mouthpiece—has been rejected in other cases (*O'Brien* v. *State,* 25 N. E. 137 (Ind. 1890); *Ross* v. *State,* 182 N. E. 865, 869 (Ind. 1932); *State* v. *Gatton,* 20 N. E. (2d) 265 (Ohio, 1938). But we prefer to rest our decision on the fundamental ground that requiring a defendant involuntarily to submit to physical examination of this type is not violative of the privilege against self-incrimination.

We are aware that there are cases which, like the *Reyes* case, have held the contrary. However, "The numerical weight of the cases seems to favor the view advocated by Professor Wigmore that the privilege should be limited to testimonial utterances by the defendant, either written or oral, and should not extend to physical disclosures the defendant is forced to make or tests to which he has involuntarily submitted." 40 Mich. L. Rev. 907 (1942). Cf. Barr, Privileges Against Self-Incrimination in California, 30 Calif. L. R. 547, 50 (1942); Morgan and Maguire, Cases on Evidence, footnote at pp. 227, 28.

Wigmore's analysis of this problem demonstrates, the speciousness of the claim of privilege herein. He points out that " . . . it is not merely any and every compulsion that is the kernel of the privilege, in history and in the constitutional definitions, but *testimonial compulsion. . .* The priv-

ilege protects a person from any disclosure *sought by legal process against him as a witness.* . . The limit of the privilege is a plain one . . . an inspection of the bodily features by the tribunal or by witnesses cannot violate the privilege, because it does not call upon the accused as a witness, *i. e.* upon his testimonial responsibility. That he may in such cases be required sometimes to exercise muscular action— as when he is required to take off his shoes or roll up his sleeve—is immaterial . . . for . . . not compulsion alone is the component idea of the privilege, but testimonial compulsion. What is obtained from the accused by such action is not testimony about his body, but his body itself (*ante,* §1150). Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one.'' (8 Wigmore on Evidence, §§2263, 2265.)

No one in our judicial history has been more zealous than Mr. Justice Holmes in the protection of the civil rights of individuals. Yet in *Holt* v. *United States,* 218 U. S. 245, the Supreme Court through him said at pp. 252, 253:

''Another objection is based upon an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. . . .''

In the Ohio case of *State* v. *Gatton, supra,* the court said at p. 266:

"Under the title 'Self-Crimination,' 1 Greenleaf on Evidence, 16th Ed., Section 469 e, the following is contained:

" 'The scope of the privilege, in history and in principle, includes only the process of testifying, by word of mouth or in writing, i. e. the process of disclosure by utterance. It has no application to such physical, evidential circumstances as may exist on the witness' ·body or about his person. The privilege does not rest on the extreme notion that a guilty person is entitled to conceal as much as he can of the evidence of his crime; but on the notion that he should not be made to confess it out of his own mouth. Nevertheless, in the last generation a false and sentimental tenderness for the guilty accused has created a tendency in some quarters to extend the privilege in ways unimagined by those who laid its foundations; and the question is now often raised whether the privilege does not protect an accused person from the inspection or search or exhibition of his person. In the great majority of jurisdictions this extension has received no sanction; for example, the accused may be compelled to stand up in court for identification; a physician may be sent to examine him, while in jail, as to his mental condition; a measurement of the accused's feet, for the purpose of identifying footprints, may be taken; the accused may be compelled to place his foot in tracks for the purpose of noting the correspondence.' "

In brief, the object of this privilege is to prevent "the employment of legal process to *extract from the person's own lips* an admission of his guilt . . . " (Wigmore, *supra,* §2263.) And the privilege of freedom from testimonial compulsion embodied in the phrase "be a witness against himself" "must not be extended irrationally to cover situations clearly outside the plain meaning and policy back of the privilege." (*Ross* v. *State, supra,* at p. 868.)

We recognize that the reasoning employed herein destroys the foundation on which *Reyes* v. *Municipal Court, supra,* rests. That case is therefore expressly overruled.

■ Finally, the defendant complains that the district attorney, in his address to the jury, argued that "the blows which the defendant alleges were inflicted on him by the deceased with this tube existed only in the mind of the defense, as neither this district attorney, nor the Chief of In-

sular Police of Caguas, nor my secretary Luis Pérez observed any trace of a blow on the body of the defendant".

The record before us does not contain a transcript of the district attorney's address. We are therefore unable to determine if this comment was made, or if there was objection thereto. But assuming those facts, we find that this was legitimate comment by the district attorney on his own testimony. *People* v. *Yera,* 60 P.R.R. 796, is applicable to this situation rather than *People* v. *Marchand,* 53 P.R.R. 640.

The judgment of the district court will be affirmed.