RUDD *v.* STATE OF INDIANA.

[No. 28,768.   Filed August 4, 1952.]

106

*Clarence E. Benadum* and *Frederick F. McClellan, Jr.,* both of Muncie, for appellant.

*J. Emmett McManamon,* Attorney General; *John Ready O'Connor* and *William T. McClain,* Deputy Attorneys General, for appellee.

EMMERT, J.—The grand jury of Madison County, for the April 1949 term, returned an indictment in three counts charging appellant with murder in the second degree, voluntary manslaughter and involuntary manslaughter. Appellant seasonably filed a plea in abatement to the indictment, wherein he charged violations of several statutes prescribing the duties of the jury commissioners and the clerk. After a hearing the trial court overruled the plea in abatement, and appellant entered a plea of not guilty to each count of the indictment. Appellant was then tried by a jury, which returned a verdict that he was guilty of murder in the second degree, and from the judgment on this verdict this appeal is prosecuted.

The only issue properly presented here is the legality of the grand jury that indicted appellant. "It is well settled that this court will indulge all reasonable presumptions in favor of the regularity and validity of proceedings in the lower courts, and will not reverse a judgment unless the record affirmatively shows that material errors intervened in such proceedings." *Ford* v. *State* (1887), 112 Ind. 373, 376, 14 N. E. 241. Ewbank, Ind. Cr. Law (2d Ed.) §198, pp. 121, 122.

We have carefully examined the record of all the evidence heard on the plea in abatement, and from the uncontroverted evidence it appears that clear statutory provisions were disregarded concerning the selection and placing of names in the jury box, the security pro-

visions for keeping the jury box locked, the drawing of names for jury service, and the calling of such persons for grand jury service.

Charles C. Harrold, Clerk of the court, and Ray Houston, a jury commissioner, were members of the same political party, and Vernet Turner, the other jury commissioner, was not an "adherent of the same political party as the clerk." Turner was appointed commissioner in February, 1948, but he was never instructed by the court as to his duties as required by §4-3301, Burns' 1946 Replacement. There is some dispute in the evidence as to why or whose fault it was that Turner did not have the key to the jury box as required by §4-3304 and §4-3305, Burns' 1946 Replacement,[1] but it clearly appears from the evidence that he did not begin keeping the key in his possession until after the return of the indictment against appellant on April 22, 1949. Before this time the clerk had the key. The jury box was not emptied during the last term of court for 1948 before more names were placed therein for jury service for the next calendar year, as required by §4-3304, Burns' 1946 Replacement. *State* v. *Bass* (1936), 210 Ind. 181, 184, 1 N. E. 2d 927. Both jury commissioners obtained the names from the tax schedules in the county assessor's office, but neither did so in the presence of the other at any time, and it must be inferred that these names were placed in the jury box by each without the other being present. This was a violation of §4-3304, Burns' 1946 Replacement. The jury commissioner Turner was not present nor was he notified to be present on March 28, 1949, when the grand jury for the April term was drawn from the jury

---

[1] " . . . The key shall be retained by one of the commissioners not an adherent of the same political party as is the clerk." Section 4-3304, Burns' 1946 Replacement.

box.[2] The order book record disclosed that the name of Walter Stohler was drawn second from the box for the April term grand jury, but he was never called nor did he ever serve as a grand juror at the April term nor at any other time in 1949.[3] At various times if the clerk or a jury commissioner knew a name as drawn from the box was of a deceased person, or had a guardian appointed for him or was insane, by mutual agreement such name was stricken off the list as drawn without any court order being had. There was no exclusion of members of the Negro race for jury service, nor was there any bad faith, fraud or corruption in any of the acts or omissions of the clerk or either jury commissioner.

The state's position is that none of the acts or omissions were done in bad faith or harmful to the sub-

---

[2] " . . . the clerks, having first well shaken the box, shall open the same in his office, and in the presence of the jury commissioners he shall publicly draw therefrom such number of names of competent persons as the judge of such court shall have ordered to be summoned as prospective jurors for such court. . . ." Section 4-3320, Burns' 1946 Replacement.

[3] ". . . At such original drawing for the term, the names of competent persons first drawn for each court having criminal jurisdiction, in the number specified by the court in such order as prospective grand jurors, shall be summoned as grand jurors for such court for the ensuing term. . . . Provided, That the order of the names as listed in the panel and as called for service shall be the same order as that in which the names are drawn from the box, as herein provided. The clerk shall at the time of drawing such prospective jurors, enter a list of names so drawn, upon the order-book of the court, in the same order in which the names are drawn from the box, and he shall attach his certificate of the fact. The clerk shall issue venires for such jurors as such courts, or the judges thereof in vacation, may direct. The sheriff or bailiff shall then call the jurors to the jury box in the same order as that in which their names are drawn from the box and certified thereto." Section 4-3320, Burns' 1946 Replacement (§1, Ch. 156, Acts 1937).

stantial rights of appellant, that the acts or omissions were merely irregularities, and that, therefore, the trial court properly refused to abate the indictment. The state insists that §4-3321, Burns' 1946 Replacement, justifies the action of the trial court. This section in part provides:

" . . . This act shall be construed liberally, to the effect that no indictment shall be quashed, and no trial, judgment, order or proceeding shall be reversed or held invalid on the ground that the terms of this act have not been followed, unless it shall appear that such noncompliance was either in bad faith or was objected to promptly upon discovery and was probably harmful to the substantial rights of the objecting party." (Section 2, Ch. 156, Acts 1937.)

However, it should be noted that this section only applies to Chapter 156 of the 1937 Acts, and the only section of this act involved in this appeal concerns the time, manner, method, place, recording, and summonsing of the grand and petit juries in such numbers as may have been fixed by order of court. Since no bad faith was involved, and since appellant did promptly object by proper procedure to the statutory violations, we must determine whether the violations of §4-3320, Burns' 1946 Replacement, were probably harmful to the substantial rights of appellant. Unfortunately, we are not able to obtain much help from the precedents of this state, since each case was decided with reference to its particular facts, and the language of the opinions must be understood in the light of the particular facts involved.

It is difficult to imagine that the General Assembly, after prescribing the procedure to be followed by §4-

3320, Burns' 1946 Replacement, to insure judicial fairness in drawing and calling grand and petit juries, then by §4-3321, Burns' 1946 Replacement, intended to say that none of these requirements mean anything for an accused unless he could prove at a hearing on his plea in abatement that he was innocent and ought not have been indicted in the first place. It seems to us that the proper construction is to hold that an accused, regardless of his guilt or innocence, has the right to insist that there be substantial compliance with §4-3320, Burns' 1946 Replacement, and if these provisions are not substantially complied with, his substantial rights are harmed.

In *Anderson* v. *State* (1941), 218 Ind. 299, 32 N. E. 2d 705, this court, after a review of the authorities, and after noting the provisions of Chapter 156 of the 1937 Acts, held that appellant's substantial rights had not been violated by failure to properly enter and certify the names on the order book, and to give two days' notice of one drawing.[4] The opinion quoted with approval the language of Judge Mitchell in *Cooper* v. *State* (1889), 120 Ind. 377, 379, 22 N. E. 320, which is as follows:

"The intervention of mere irregularities in drawing and organizing the grand jury, which

---

[4] "The departures from statutory procedure were that the clerk failed at the time of the first drawing then to enter the names drawn on the order book, that the second drawing did not have two full days' notice, and that in the third, the clerk's entry was delayed. All matters were of record, however, on September 5, 1939, [the indictment was returned December 1, 1939] except the clerk's certificate to the last entry. The plea in abatement was filed December 8th, and thereafter upon the order of the court the clerk's certificate to the record of the third drawing was entered as of the date of the drawing." *Anderson* v. *State* (1941), 218 Ind. 299, 303, 32 N. E. 2d 705.

involve no charge of fraud or corruption, and which in no way prejudice the substantial rights of the defendant, assuming, in the absence of anything appearing to the contrary, that the body as constituted was composed of persons duly examined and qualified, and not subject to any of the statutory causes of challenge, is not available as a plea to abate the indictment. Whart. Cr. Pl. and Pr. (9th ed.), section 350; *State* v. *Mellor*, 13 R. I. 666."

But in the Cooper case, *supra*, it is quite clear that the plea in abatement was not timely filed, and it failed to allege absence of substantial compliance with the law on grand juries.[5]

Since there was not subtantial compliance with the statutes on grand juries we are of the opinion that the substantial rights of appellant were harmed, both under §4-3321, Burns' 1946 Replacement, and under the test laid down in *Cooper* v. *State*

---

[5] In *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, this court held that appellant's substantial rights had not been harmed because the court ordered twelve grand jurors drawn, and the order book did not show the names of those who did serve, nor was he harmed by the fact that the drawing was done in a small wood and glass enclosure in the clerk's office used by him for private conferences.

In *Dale* v. *State* (1928), 200 Ind. 408, 164 N. E. 260, a plea in abatement which alleged no record whatever of the names of the grand jury in the order book, was sufficient to abate the indictment. This clearly was no substantial compliance.

In *State* v. *Bass* (1936), 210 Ind. 181, 1 N. E. 2d 927, the plea in abatement alleged that "there was opportunity for names to be inserted in the box by others than the jury commissioners; that the names of two who were active in seeking an investigation of the matters involved in the indictment were in the box," and that the name of one of the jury commissioners was drawn from the box for both petit and grand jury service. This court held such violations made the grand jury an unlawful jury, and its indictment subject to abatement.

(1889), 120 Ind. 377, 379, 22 N. E. 320, *supra,* and subsequent cases following its reasoning. A lack of substantial compliance is more than an irregularity. These matters were promptly presented before a plea of not guilty, and the alleged offense could have been promptly presented to another grand jury lawfully constituted before the expense of a jury trial. As was stated in *State* v. *Bass* (1936), 210 Ind. 181, 184, 1 N. E. 2d 927, "Our statutory method of drawing juries was devised for the purpose of putting the selection beyond suspicion of advantage or favoritism." The only way this court has to enforce substantial compliance with the statutes on juries is to reverse when the issue is properly presented in the trial court and here.

Appellant's brief fails to comply with Rule 2-17 (e) in presenting his causes for a new trial that the verdict was not sustained by sufficient evidence, and was contrary to law. Approximately one-half page in the "argument" section is devoted to each cause. Neither cause is supported by applicable points of fact or law. Such causes for new trial are waived. Rule 2-17 (f) ; *Hartsfield* v. *State* (1950), 228 Ind. 616, 94 N. E. 2d 453.

Judgment reversed, with instructions to abate the indictment.

NOTE.—Reported in 107 N. E. 2d 168.