KING *v.* STATE OF INDIANA.

[No. 29,436.   Filed January 30, 1957.]

*Thomas M. Moorhead, Jr.,* and *C. A. Lincoln,* of Fort Wayne, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was convicted of murder in the first degree and sentenced to life imprisonment. He claims error in the overruling of his plea in

abatement. He states that, (1) the grand jury was not legally impaneled, (2) he was denied counsel for approximately twelve hours following his arrest, (3) evidence was presented to the grand jury which was improperly obtained from appellant and over his objections. No contention is here made that there was any error in the trial on the merits in which the verdict of guilty was rendered.

The alleged errors are based upon the following circumstances. The Grand Jury for the Allen Circuit Court was duly impaneled for the November Term, 1954. It met and performed certain duties. The court, after reciting the actions of the grand jury on November 18, 1954, made the following order book entry:

"And said Grand Jury is now by the court discharged."

Appellant was arrested for murder about 3:00 P.M. on November 25, 1954, and taken to the jail. The next day by reason of his arrest, the circuit court issued an order for a venire for the members of the grand jury for the November term to appear. The order book at the time of the second convening of the *same members* is in part as follows:

"And after examination under oath said persons being found competent and qualified to serve as Grand Jurors are now by the court duly sworn as Grand Jurors of said Court for said Term as required by law.

"And said Grand Jury being duly impaneled and sworn, the Court now charges said Grand Jury and instructs said Grand Jurors as to their duties and gives them such information as the Court deems proper in relation to any charges returned into Court which are likely to come before the Grand Jury.

"The Court now appoints Harry W. Henline, one of the members of the Grand Jury as foreman of same, and the Court now appoints Harry F. Einsick as Bailiff of said Grand Jury."

On November 29, 1954 the indictment herein was returned by this grand jury against the appellant. Appellant claims that once the grand jury was "discharged," it could not be legally reconvened.

We place no particular significances on the court's use of the term "discharge" in its order book entry. "Dismiss" and "discharge" appear to be practically synonymous. Websters' New International Dictionary, Revised Edition. *Hughes* v. *The State* (1876), 54 Ind. 95.

The general rule is that a grand jury which has been dismissed before the adjournment of court for the term may be recalled at the same term of the court. *Smith* v. *State* (1900), 24 Ind. App. 688, 692, 57 N. E. 572; *Long* v. *The State* (1874), 46 Ind. 582; *Green, Alias McQueen* v. *State* (1910), 60 Fla. 22, 53 So. 610; 38 C. J. S., Grand Juries, §5, p. 986.

We point out also that the record shows a grand jury legally impaneled, as to all formalities except that the membership appears to be the same as that which was called at the opening of the same term.

Acts 1937, ch. 156, §2, p. 839, being §4-3321, Burns' 1946 Replacement, provides with reference to the manner and form of drawing and impaneling a grand jury:

"This act shall be construed liberally to the effect that no indictment shall be quashed, and no trial, judgment, order or proceeding shall be reversed or held invalid on the ground that the terms of this act have not been followed, unless it shall appear that such noncompliance was either in bad faith or was objected to promptly upon discovery and was probably harmful to the substantial rights of the objecting party."

There is no element of bad faith here, nor do we be-

lieve the substantial rights of the appellant were harmed. We have examined the case of *Rudd* v. *State* (1952), 231 Ind. 105, 107 N. E. 2d 168, cited by appellant, and find an entirely different set of facts existing in that case. There, the jury box was not emptied before names were placed therein for the ensuing year; not all names drawn from the box were listed and recorded; the security provisions for keeping the jury box locked and in other particulars were not followed. In the case before us the record shows the jury was originally properly drawn, and the court during the same term merely recalled and reimpaneled the same members. There was a substantial compliance with the statutory provisions. *Rudd* v. *State* (1952), 231 Ind. 105, 107 N. E. 2d 168; *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, 37 N. E. 2d 537; *Anderson* v. *State* (1941), 218 Ind. 299, 32 N. E. 2d 705; *Hitch* v. *State* (1936), 210 Ind. 588, 4 N. E. 2d 184.

The record further shows that appellant did not "object promptly" as provided by the statute. The facts are plain that on November 26th the court ordered the clerk to issue a venire "for the grand jury, drawn and selected for the November 1954 term of this court." On November 29th the grand jury was sworn, impaneled, and returned the indictment against the appellant. The record further shows he had counsel on November 25, 1954 within about twelve hours after his arrest, and four days prior to the reconvening of the grand jury. No timely objection was made to the array prior to the return of the indictment on November 29, 1954. Appellant and his counsel were fully aware of the reasons for appellant's arrest, and the reason for the convening of the grand jury. Appellant may not stand by and make no objections, await the outcome, and then if un-

favorable, attempt to rely upon such an alleged error, which could have been corrected if promptly called to the attention of the court at the time. In such cases where the opportunity is available for objection, if not made promptly, it is waived. This is not a case of a defendant, not under arrest or not bound over for a grand jury, who has not had an opportunity to object.

In *Stipp* v. *State* (1918), 187 Ind. 211, 118 N. E. 818, this court said on page 213:

> "Without disputing this contention, the state insists that appellants' remedy, if any, is provided by §1965 Burns' 1914, Acts 1905, p. 607, and that they should have challenged the selection of Ross before the grand jury was sworn. It is true, as stated in 12 R. C. L. 1032, §19, that: 'If the accused knew that his case would be presented to the grand jury because he had been committed to await its action, he must . . . object to defects in the grand jury's organization by challenge to the polls or to the array. But if he was not in custody or out on bail at the time the grand jury was impaneled, and so had no knowledge that his case would go before the grand jury, and consequently no opportunity to object to its organization before the indictment was found against him, he may make his objection by plea in abatement.' "

For further comment upon this point see Indiana cases cited and examined in note 72 to 22 C. J. S., Criminal Law, §427 b. (4) (d), p. 665. The court committed no error in recalling the grand jury in this case. The appellant also waived any right to object to the array.

The evidence on the plea in abatement further shows: That appellant was arrested at his home in Allen County about 3:00 P.M. on November 25, 1954 (Thanksgiving Day) following the killing of his stepson. He was taken to the Allen County jail, arriving there about 4:00 P.M. The arresting officer talked to him intermit-

tently on the way to the jail, and up to the time his counsel arrived later in the night. Appellant refused to talk about the killing at first until he had an opportunity to talk with his attorney, Mr. Moorhead of Fort Wayne, Indiana. The evidence shows there were two attorneys by the name of Moorhead, a father and a son. There is evidence that the sheriff was first requested to contact Attorney Moorhead about 500 P.M. on November 25, and at that time the sheriff called the telephone number of Mr. Moorhead, Sr., and a lady answered, and said Mr. Moorhead was out of town. About 12:30 at night the sheriff again called Mr. Moorhead's home, and at that time talked to Mr. Moorhead, Jr., and told him the appellant wanted to talk to an attorney. The attorney came at once to the jail but was required to wait about 45 minutes before he could see the appellant. He finally talked to him around 2:00 A.M. on the morning of November 26.

Prior to the arrival of Mr. Moorhead, Jr., the appellant was questioned from time to time by police officers. A recording device was set up in the sheriff's office within the view of the appellant, and statements were recorded that were made by the wife and boy, and also that of the appellant. This was done about 7:30 P.M. Prior to the recording of appellant's statement, his wife's statement had been played back to him. The appellant claimed he had no knowledge of any recordings made of his own statements. So far as the record shows the only use made of these recordings was before the grand jury. The use of the tape recording before the grand jury is one of the grounds of objections stated in the plea in abatement.

Appellant contends, as a result, that he was compelled to testify before the grand jury against his will in violation of his constitutional right. We see no reason why the officers who heard what was recorded, could not

have testified from memory before the grand jury. If this be true, then the recording, which probably would be more accurate, would be competent.

The essences of appellant's contention is that the court has a duty to rule upon the competency of evidence presented to a grand jury. In other words, shall the courts apply a screening process to the evidence coming before a grand jury just as it does to the evidence presented in a trial on the merits? We think not.

There is no question raised here as to a fair trial on the merits in this case. So far as we know all the evidence presented was competent. We must assume such to be true. The record does not show that any of the evidence before the grand jury of which complaint is made here, was presented in the trial on the merits. 38 C. J. S., Grand Juries, §1a, p. 980 states:

> "A grand jury is an inquisitorial, informing, and accusing body, but is generally not regarded as a judicial body or tribunal; it always proceeds ex parte, and it is not a trial body, or the ultimate fact finder."

In Indiana a grand jury does not have the eminence that such a body does in most other states, since it may be abolished and limited by statute. Art. 7, §17, Indiana Constitution. *State* v. *Roberts* (1906), 166 Ind. 585, 77 N. E. 1093; *Lee* v. *State* (1922), 192 Ind. 13, 134 N. E. 866.

There is a long line of decisions in this state holding that the trial court will not inquire into the competency of evidence upon which a grand jury acts, even where most, if not all, of the evidence presented resulted from an illegal search or seizure. *State* v. *Comer* (1902), 157 Ind. 611, 62 N. E. 452; *Brown* v. *State* (1933), 204 Ind. 585, 184 N. E. 177; *DeLong* v.

*State* (1929), 201 Ind. 302, 168 N. E. 22; *Stephenson* v. *State* (1933), 205 Ind. 141, 179 N. E. 633, 186 N. E. 293; *Pointer* v. *The State* (1883), 89 Ind. 255.

Grand jurors may return an indictment upon their own knowledge or even hearsay, just as a prosecuting attorney may not be questioned as to his discretion in approving and filing an affidavit charging an offense. 22 C. J. S., Criminal Law, §427 b5(b), p. 669.

Appellant has referred to certain cases, among them, *Suter* v. *State* (1949), 227 Ind. 648, 88 N. E. 2d 386; *Ross* v. *State* (1933), 204 Ind. 281, 182 N. E. 865, and others. These are cases which have enforced the constitutional right against self-incrimination in the trial proper, or protected the defendant against being compelled to go personally before the grand jury and testify. We do not believe they support appellant's position here. There is no constitutional provision which prohibits law enforcement officers from talking to defendants under arrest. Such officers should not be condemned, but rather commended in any pretrial efforts to identify or to question persons suspected or charged with crime, so long as no force or threats are used. We find nothing in the record showing conduct by law enforcement officers in this case which would warrant our interposition. *Marshall* v. *State* (1949), 227 Ind. 1, 83 N. E. 2d 763; *Ross* v. *State, supra* (1933), 204 Ind. 281, 182 N. E. 865; *O'Brien* v. *The State* (1890), 125 Ind. 38, 25 N. E. 137, 9 L. R. A. 323.

The mere fact that a confession has been made while an accused is in custody does not render it inadmissible in the absence of evidence of coercion, even in the trial, to say nothing of a grand jury inquest. *Pearman* v. *State* (1954), 233 Ind. 111, 117 N. E. 2d 362.

We further point out that the contents of the tape recordings are not in the bill of exceptions or record before us. We do not know that they were confessions, mere denials of guilt or a complete statement of any defense he might have had. There is no evidence of any force, threats or violence imposed upon the appellant when the recordings were made. Therefore, we cannot conclude in the absence of their contents that prejudicial error was committed.

There is no showing of an unreasonable denial of counsel considering the confusion as to whether the father or the son was wanted as an attorney; that it was evening and one of them was absent from home when called. Appellant was not deprived of counsel prior to or during the grand jury inquiry or trial. There is no showing that appellant was deprived of a fair trial by reason of any alleged delay of twelve hours before he could secure counsel.

A criminal trial starts with the presumption of the innocence of the defendant. The jury is instructed that no inference of guilt is to be drawn from the fact that a grand jury has returned an indictment against the defendant. No error is claimed in the trial of the appellant on the merits, and we fail to see where he has been harmed or prejudiced by a claimed technicality in the grand jury proceedings.

Acts 1905, ch. 169, §334, p. 584, being §9-2320, Burns' 1956 Replacement, provides:

"In consideration of the questions which are presented upon an appeal, the court shall not regard technical errors or defects, or exceptions to any decision or action of the trial court, which did not, in the opinion of the court to which the appeal is taken, prejudice the substantial rights of the defendant."

The trial court committed no reversible error, and the judgment is affirmed.

Achor, C. J., and Emmert, Bobbitt and Landis JJ. concur.

NOTE.—Reported in 139 N. E. 2d 547.