Jimmie Gordon DEATON, Appellant,

v.

STATE of Indiana, Appellee.

No. 177S17.

Supreme Court of Indiana.

May 21, 1979.

Charles Gregory Read, Jeffersonville, for appellant.

Theo. L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Deaton was charged in an indictment by the Clark County Grand Jury with two counts of inflicting injury in the commission of a robbery, armed robbery and felony murder. Following a change of venue, appellant was found guilty on all counts by a jury in the Brown Circuit Court on August 6, 1976. He was accordingly sentenced to a term of thirty years imprisonment for armed robbery and to terms of life imprisonment on the other three counts.

Appellant presents six issues for our review concerning: (1) the sufficiency of the evidence; (2) the selection and composition of the Grand Jury; (3) alleged error by the trial court in not severing his trial from that of co-defendant, Eddie Porter; (4) irregularity in the selection of petit jurors; (5) allegedly suggestive pre-trial and in-court identifications, and (6) improper sentencing.

The evidence adduced at trial revealed that Martha and Ballard Keeling owned and operated a grocery store in Underwood, Indiana, Clark County, under the name of Keeling's Underwood Super Market. The Keelings lived directly across the street from their store. It was Ballard Keeling's general practice to arrive at the store each morning between 6:15 and 6:45 a. m. and remain there alone until Martha came over to the store at approximately 7:00 to 7:30 a. m.

On the morning of February 28, 1975, when Martha Keeling arrived at the store and started into the back entrance, she saw the bread delivery man, Richard Quick, and another man standing in the shadows: She observed that the man with Richard Quick had a stocking over his face and a gun in his hand. At about this time, the armed man approached her husband and a scuffle ensued at which time Ballard Keeling was shot and fatally wounded. In the scuffle, bullets also struck Martha Keeling and Richard Quick.

Quick testified that he went into the store to check the supply of bread needed and that when he was returning to his truck parked in the rear, he observed a man standing in the back of the store with a nylon stocking on top of his head. After Quick had occasion to observe the man for

at least three to five seconds, the man pulled the stocking over his face.

Quick later identified appellant as the man with a gun and stocking from photographs shown to him by police and upon confronting appellant in person at trial. Other evidence indicated that appellant Deaton had a gunshot wound to his finger and that a gun, later identified as the murder weapon, was found outside appellant's residence.

## I.

■■■ Appellant first challenges the sufficiency of the evidence supporting his convictions on all counts and the denial of his motion for judgment on the evidence made at the close of the State's case. Appellant's arguments in this regard merely present the evidence most favorable to the defense which consisted of testimony that on the night preceding the crimes, appellant had stayed at the trailer of a friend in Charlestown, Indiana. Two witnesses stated that, to the best of their knowledge, appellant had not left the trailer on the morning of February 28, 1975. Appellant now maintains that this evidence constituted undisputed proof that he was not present in Underwood on the morning in question.

In determining the sufficiency of the evidence, this Court will look only to the evidence most favorable to the State and the reasonable inferences to be drawn therefrom. We will not disturb a verdict if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Miller v. State*, (1978) Ind., 372 N.E.2d 1168, 1172. Appellant's argument is thus contrary to our review standard and presents this Court with nothing more than an invitation to reweigh the evidence. This we will not do. We think that the evidence most favorable to the State, as set out at the beginning of this opinion, was sufficient to support the jury's verdicts.

## II.

■■■ Appellant Deaton was tried jointly with one Eddie Porter. Porter filed a pre-trial motion to dismiss on the ground that he was not given an opportunity to challenge the Grand Jury pursuant to Ind. Code § 35-1-15-11 (Burns 1975) which provides:

"A person held to answer a charge for a felony or misdemeanor may challenge an individual grand juror, before the jury is sworn, for one or more of the following causes only:

First. That such individual grand juror is under the age of eighteen (18) years.

Second. That he is not a freeholder or a householder of the county.

Third. That he is an alien.

Fourth. That he is insane.

Fifth. That he is the prosecuting witness upon a charge against the defendant.

Sixth. That he is a witness on the part of the prosecution.

Seventh. That such a state of mind exists on his part in reference to the party charged that he can not act impartially and without prejudice to the substantial rights of the challenger.

Eighth. That he holds his place in the grand jury by reason of the corruption of the officer who selected and impaneled the grand jury.

Ninth. That he is in the habit of becoming intoxicated.

Tenth. That he has requested, or caused any officer of his deputy to be requested, to place him upon the grand jury."

Appellant Deaton did not join in this issue until his motion to correct errors at which time he then adopted Porter's position that since he had no opportunity to challenge the Grand Jurors, it was therefore illegally constituted, and he should be given a new trial. Appellant claims that because he and Porter were tried jointly, the alleged error in denying Porter's motion to dismiss may be assigned to appellant's case notwithstanding his failure to join in the motion when it was made. Deaton further argues that he was not represented by counsel at the time Porter moved for dismissal and therefore

did not know of his right to challenge the Grand Jurors and thus could not have waived his right to make such challenge.

Appellant has waived his right to raise this issue. Nor can the issue be revived on appeal pursuant to a theory that a defendant in a joint trial may gain vicarious assignments of error on issues raised only by his co-defendant. Of course, there is an exception to this rule in the case of fundamental errors, however, this is certainly not such an issue. We have previously stated that:

"'[I]t is generally held that there is no absolute right on the part of an accused person absent or in confinement to be brought into court for the purpose of challenging a grand jury, and that failure on his part to ask permission to appear and make his challenge at the proper time is a waiver of the privilege, and this is especially true where it is not shown that a valid cause of challenge existed, or that he was prejudiced by his absence.'"

*Sisk v. State*, (1953) 232 Ind. 214, 219, 110 N.E.2d 627, 630, *quoting* 38 C.J.S. Grand Juries § 28e., p. 1017. *See also, King v. State*, (1957) 236 Ind. 268, 139 N.E.2d 547. Appellant made no showing that he had a valid cause for challenge or that he was prejudiced in any manner by his absence before the Grand Jury at the time of its institution. He, therefore, presents no reversible error on this issue.

### III.

■ Appellant next alleges that the trial judge committed reversible error by failing to grant his motion for severance. This assertion is based on the fact that co-defendant Porter gave the police two taped interviews in which he admitted his involvement in these crimes. Porter did not testify at the trial but police officer Hays was called by the State and gave testimony against Porter in regard to the two statements. Hays was advised by the prosecutor to testify only as to the incriminating statements made by Porter and to exclude any statements that involved references to Deaton. Hays then related the statements made by Porter in which Porter confessed his presence and knowledge of the events involved herein.

Porter's statements, as related by Hays, made no reference to anyone else. In other words, there were no instances wherein Deaton's name had been replaced by a blank. Appellant's argument is based on the fact that there were instances in Porter's statements which indicated that he had not acted alone on this job. For example, Porter stated that he had not driven the car, thus implying that someone else had. He also stated that as he was leaving the scene of the shooting he asked the question, "Where's my money, how about my share of the money?" thereby inferring that someone else was involved in the crime. At another point he stated that when he was outside the store he heard shots; again inferring that someone else was involved. In support of his argument appellant relies primarily upon *Bruton v. United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. In *Bruton*, an extra-judicial statement of co-defendant Evans was introduced in evidence which incriminated Bruton by expressly naming him as a participant in the offense. The United States Supreme Court ruled that Bruton's Sixth Amendment right of confrontation was denied when Evans did not take the stand and give Bruton an opportunity to cross-examine as to the confession that was admitted. The *Bruton* court further found that the trial court should have ordered the confession redacted as to its references to Bruton before it was read to the jury.

In response to the *Bruton* decision, our legislature passed Ind.Code § 35–3.1–1–11 (Burns 1975) which provides in part:

"(b) Whenever two or more defendants have been joined for trial in the same indictment or information and one or more defendants move for a separate trial because another defendant has made an out-of-court statement *which makes reference to the moving defendant* but is not admissible as evidence against him, the court shall require the prosecu-

tor to elect one of the following courses:

(1) a joint trial at which the statement is not admitted into evidence;

(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; *or*

(3) granting the moving defendant a separate trial."

Clearly, the confession in the present case does not fall under the directive of the statute or the holding in *Bruton.* Nowhere in Porter's statement, as related by Hays did Porter refer to appellant Deaton. Porter made no direct reference to the fact that someone else worked with him, other than the inferences set out above, nor was there any reference made as to how many people might have been involved in this affair. An examination of the transcript of Hays' testimony reveals that Porter admitted to the police that he was involved in the incident with others but makes no reference to how many others or who they might have been. Since there were no references to Deaton in Porter's confession, there was no need for redaction. And since there was no redaction, the jury was not improperly led to believe that blanks in the confession were deleted references to appellant. *Compare, Carter v. State,* (1977) Ind., 361 N.E.2d 145; *Sims v. State,* (1977) 265 Ind. 647, 358 N.E.2d 746. There is thus no error in this issue.

### IV.

Appellant next complains of the action by the trial court in its refusal to discharge prospective jurors because of alleged irregularities in their selection by the jury commissioners and in the method of calling jurors in this particular case. The record shows that prior to trial on July 14, 1975, the appellant raised these issues at the time the jury panel was selected. The court responded by granting appellant's motion, entering an order discharging the venire and rescheduling the trial. The jury commissioners met and drew a new venire who were then called for appellant's trial for July 28, 1975.

On July 16, 1975, appellant again filed a motion to discharge the jurors. A hearing was held on the motion at which certain witnesses testified that the problems complained of earlier no longer existed. The motion was then denied.

The composition and selection of this second jury and the ruling of the trial court on appellant's challenge to this panel are not raised or discussed in appellant's brief. Rather, the only questions raised by appellant are those issues which were cured by the trial court when it discharged the first panel at appellant's request. Therefore, there is no question of error before this Court in that regard.

Appellant further argues that when the jurors were actually called for duty, some of their names were skipped over when they could not be contacted by phone and certain people were excused if it appeared they had some reason for not being able to serve at the time of appellant's trial. Although it is not clear from his brief, appellant apparently feels that the trial court's staff was not strict enough and allowed some jurors to avoid jury duty when called upon to serve. He concludes generally that certain people were excused who should not have been.

Be that as it may, no ground for reversal is presented by this specification. There is no showing here that there was any systematic exclusion of any group or an arbitrary method of selection or calling of jurors. Minor irregularities in compliance with the statutes directing selection and calling of jurors will not present reversible error unless there is prejudice to the defendant's substantial rights as a result of such irregularities. *Shack v. State,* 259 Ind. 450, 288 N.E.2d 155; *Harrison v. State,* (1952) 231 Ind. 147, 106 N.E.2d 912; *Rudd v. State,* (1952) 231 Ind. 105, 107 N.E.2d 168. There is no showing here that appellant was in any way prejudiced by any irregularity in the method of composing or calling the jury.

## V.

Appellant next contends that it was reversible error to allow witness Richard Quick to testify in regard to his identification of appellant. He claims that Quick's in-court identification of appellant was tainted by an allegedly suggestive pretrial photographic display. Quick stated that he observed appellant from a distance of about three feet, face to face, during day-light, for three to five seconds before appellant pulled a stocking over his face. He testified that he had seen Deaton clearly and recalled his appearance. A week later, while he was in the hospital, the police came to Quick's bedside and showed him seven or eight photographs of individuals who fit the general description of the attacker as given by Quick. He looked at the photographs and picked out Deaton's photograph from the array. Although the date, February 28, 1975, appeared at the bottom of appellant's photograph, Quick stated that there were no identifying marks on the photos and that he had chosen appellant's picture simply because it was the likeness of the man he saw on the morning of the shooting.

Claims in regard to the suggestiveness of photographic displays are to be evaluated in light of the totality of the surrounding circumstances and with consideration of the facts of each case. *Gaddis v. State*, (1977) Ind., 368 N.E.2d 244, 249; *Emerson v. State*, (1972) 259 Ind. 399, 402, 287 N.E.2d 867, 869. A witness' in-court identification following a photographic display need not be suppressed unless it is shown that the photo display was unnecessarily suggestive. *Stovall v. Denno*, (1967) 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206. We do not believe that the display in the present case meets that test. *Cf. Gaddis, supra.* Quick's in-court identification was properly admitted.

## VI.

Appellant's final contention concerns the sentences imposed upon his convictions. He argues that it was error to impose the thirty year sentence for armed robbery in addition to the life sentences. We agree.

This Court has consistently held that armed robbery is a lesser included offense of inflicting physical injury while in the commission of robbery. *Bobbitt v. State*, (1977) Ind., 361 N.E.2d 1193; *Swininger v. State*, (1976) 265 Ind. 136, 352 N.E.2d 473; *Thomas v. State*, (1976) 264 Ind. 581, 348 N.E.2d 4. As appellant has already been sentenced on the greater offense, it would violate his protection against double jeopardy to impose an additional sentence for the lesser offense. *Elmore v. State*, (1978) Ind., 382 N.E.2d 893. Accordingly, the sentence for armed robbery must be vacated.

This cause is remanded to the trial court with instructions to vacate the thirty year sentence under Count III. The judgment of the trial court is affirmed in all other respects.

All Justices concur.