Robin E. CROSS, Appellant. (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 1276S424.

Supreme Court of Indiana.

Nov. 29, 1979.

David J. Colman, Colman, Lowenthal & Loftman, Bloomington, for appellant.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Robin E. Cross, was convicted by a jury of murder in the second degree, Ind.Code § 35-1-54-1 (Burns 1975), and sentenced to fifteen to twenty-five years' imprisonment. He now appeals raising several issues for our review. However, because of our disposition of the issue regarding jury selection procedures, we reverse upon consideration of only this issue.

Defendant challenges the procedures employed in selecting the venire for this cause as being violative of Ind.Code § 33-4-5-2 (Burns 1975). That statute provides in relevant part:

"Said commissioners shall immediately, from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color, of twice as many persons as will be required by law for grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. In making such selections, they shall in all things observe their oath, and they shall not select the name of any person who is not a voter of the county, or who is not either a freeholder or householder, or who is to them known to be interested in or has cause pending which may be tried by a jury to be drawn from the names so selected. They shall deliver the box, locked, to the clerk of the circuit court, after having deposited therein the names as herein directed. The key shall be retained by one (1) of the commissioners, not an adherent of the same political party as is the clerk."

Uncontroverted affidavits attached to defendant's motion to correct errors indicate the procedure for selecting the venire in Brown County at and prior to the time of defendant's trial. Verified affidavits were submitted by the Brown County Clerk, Violet Wayman, and one Jury Commissioner, Maurice "Pods" Miller. Both affidavits read in part as follows:

"3. When the jury panel was selected for March, 1976, the procedure followed was:

"a. The Jury Commissioners selected every tenth name from the voter registration records in the Brown County Clerk's Office, going through such lists precinct by precinct.

"b. The names were placed on a list in the same order in which they were drawn from the alphabetized precinct voter registration lists.

"c. The list was then given to the County Clerk who presented it to the Circuit Court.

"4. There was no randomization process through the placing on uniform slips of paper of the names of the jurors on the panel, placing those slips in a locked box,

having the box shaken well by the Clerk who would then draw names from that box."

■ Prior to addressing the merits of this issue we turn to two objections to our review raised by the state. First, the state claims that defendant waived this issue by accepting the jurors on the trial of the case. In *Fenwick v. State*, (1926) 197 Ind. 572, 150 N.E. 764, this Court found that the defendant waived irregularities in the selection of prospective jurors by the jury commissioners by accepting the jurors. In *Fenwick*, defendant claimed that at the time of trial he was unaware of the alleged irregularities. However, this Court noted:

"An examination of the public records in the clerk's office any time after his arrest and before April 25, the date of the trial, would have disclosed all the facts of which he claims ignorance." 197 Ind. at 574, 150 N.E. at 764.

However, in the case at bar, the Brown County Clerk, in her affidavit, said:

"The records in the Brown County Clerk's Office do not reflect that the above-described selection process was followed, or that there was any impropriety in the selection process utilized."

The state claims that defendant fails to show that he exercised due diligence in attempting to discover the alleged errors. We are at a loss to determine what sort of diligence the state would require of a defendant. For this Court to require routine interviews of county clerks and jury commissioners prior to voir dire of juries would unduly burden, not only defendants, but those public officials as well. We will not place so broad an interpretation on *Fenwick v. State, supra*. Where the records of the county clerk do not reveal irregularities in venire selection, acceptance of the jury will not be deemed a waiver of said irregularities.

■ Next the state argues that Ind.Code § 33-4-5-2 (Burns 1975) does not apply in this case because that statute applies only to counties with a population exceeding 650,000, i. e., Marion County, Indiana. The state has been led astray by the compiler's

heading to this section of the official Indiana Code, "Selection of jurors; counties of more than 650,000." IC 33-4-5-2 (1976 Ed.). Had the state carefully read the text of the statute it would have discovered that the second paragraph of IC 33-4-5-2 (1976 Ed.) establishes a special procedure for Marion County. The first paragraph is clearly applicable to Brown County, Marion County and every other county of Indiana.

We now must look to whether the procedure followed in the case at bar amounts to substantial compliance with the statutory requirements. *Rudd v. State*, (1952) 231 Ind. 105, 107 N.E.2d 168; *Shack v. State*, (1972) 259 Ind. 450, 288 N.E.2d 155. In *State v. Bass*, (1936) 210 Ind. 181, 1 N.E.2d 927, we said:

"From the earliest times rules and methods have been devised for drawing juries in an effort to insure the selection of disinterested jurors, and with a view to preserving the purity of the jury as an institution. Our statutory method of drawing juries was devised for the purpose of putting the selection beyond suspicion of advantage or favoritism. This result can be achieved only by a strict conformance to the requirements of the statute." 210 Ind. at 184, 1 N.E.2d at 928.

The language of the current statute indicates that the legislature has determined that an impartial jury can best be obtained through a random selection process.

The process employed in the case at bar meets neither the letter of the law nor the spirit of randomization. The trial court received a list of prospective jurors in alphabetical as well as some geographical order. The procedure employed would not likely achieve the goal stated in the statute:

"Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district." Ind.Code § 33-4-5-2 (Burns 1975).

■ We find that the venire selection procedure in the case at bar did not substantially comply with the requirements of Ind.Code § 33-4-5-2 (Burns 1975). When a

defendant fails to show lack of substantial compliance with statutory requirements, this Court will require a showing of prejudice to the defendant's rights. *Shack v. State, supra; Leonard v. State,* (1968) 249 Ind. 361, 232 N.E.2d 882. However, when there is a lack of substantial compliance, the defendant need not show actual prejudice.

"It seems to us that the proper construction is to hold that an accused, regardless of his guilt or innocence, has the right to insist that there be substantial compliance with [the statute], and if these provisions are not substantially complied with, his substantial rights are harmed. *Rudd v. State,* (1952) 231 Ind. 105, 111, 107 N.E.2d 168, 170.

Furthermore, Judge Emmert noted that: "The only way this court has to enforce substantial compliance with the statutes on juries is to reverse when the issue is properly presented in the trial court and here." 231 Ind. at 113, 107 N.E.2d at 171.

Moreover, the record before us includes a certified transcript of another cause which depicts the events which brought the non-compliance to the attention of defendant in the case at bar. After a hearing Judge Woods discharged the venire in the other cause because of the selection procedure employed. We are not inclined to deny this defendant the protection of the law because he could not discover the errors of the jury commissioners through an examination of the clerk's public records.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I must respectfully dissent from the majority opinion, wherein it finds that appellant did not waive the issue concerning the manner in which the jurors were selected by accepting them at trial and failing to raise the question until his motion to cor-rect errors. It is true that the system of selection used by the jury commissioners here was improper and did not comply with the statutes. It is also true, however, that appellant did not look at the public records in the Clerk's office or make any other attempt to determine whether the statutory procedure had been followed. As the majority has pointed out, *Fenwick v. State,* (1926) 197 Ind. 572, 150 N.E. 764, places a duty on a defendant to examine the records and raise the issue at a time when the trial court can correct the problem by discharging the jurors who were improperly selected and requiring the commissioners to select a jury in the proper statutory method. This is the law under *Fenwick, supra,* and its progeny. *See Sturrock v. State,* (1951) 229 Ind. 161, 96 N.E.2d 226; *Anderson v. State,* (1941) 218 Ind. 299, 32 N.E.2d 705; *Souerdike v. State,* (1938) 214 Ind. 523, 15 N.E.2d 379; *Kark v. Central Greyhound Lines,* (1949) 119 Ind.App. 303, 85 N.E.2d 277.

Appellant argues that he did not discover the problem until four or five months after the trial, when the question was raised in another unrelated case. When the trial court had the issue before it in this other case, the jurors who had been selected were excused and new ones selected in a proper manner. The appellant gives no reason why he could not have discovered this in May at the trial of his case, when in fact it was discoverable in another case a few months later. Appellant's counsel never looked to attempt to discover it. The only other exhibit in the record is an affidavit by the Brown County Clerk, which simply states that the improper procedure could not have been determined by looking at her records. This affidavit is bewildering, to say the least, and is certainly not sufficient to establish the proposition adopted by the majority opinion—that appellant did not waive the issue. The Clerk gave no facts to substantiate the bare statement that the impropriety of the selection process would not have been disclosed by looking at the records. Without explanation, her conclusion is not sufficient.

If the records in the Clerk's office failed to show *at all* how the jurors were selected, this alone would have given appellant, if he had examined the records, grounds for raising the question in the trial court. He could have called into question the propriety of impanelling a jury selected by a process not revealed in the records. On the other hand, if other facts would show that the improper selection process described by the Clerk was actually used, but the records falsely showed that a procedure which complied with the statutes was followed, this would give rise to a claim by those looking at the records and relying on them that they had been misled as to what actually happened and therefore should be excused from making the wrong conclusion as to whether to raise an issue concerning the correctness of the selection procedure. We have no basis for making either of these findings here, as we have been furnished nothing by the appellant except the accepted fact that he made no effort whatever to investigate this issue at the time of trial, and the simple statement by the Clerk that he could not have determined it if he had investigated.

This record clearly shows that appellant failed to exercise due diligence in attempting to discover the alleged errors and thereby waived the issue. I would therefore affirm the trial court on this issue and proceed to consider the other issues raised in this appeal.

GIVAN, C. J., concurs.