Kenny HARDY, Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 2-278A49.

Court of Appeals of Indiana,
Fourth District.

Dec. 23, 1981.

Rehearing Denied March 10, 1982.

Carolyn S. Holder, Lafayette, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Kenneth Hardy was convicted by a jury for unlawful dealing in a controlled substance and sentenced to five years in prison. In challenging the fairness of his trial, Hardy contends the trial court erred in 1) denying his motion to dismiss the indictment, 2) denying his pre-trial motion to suppress evidence procured by entrapment, 3) allowing hearsay evidence during a pre-trial suppression hearing, 4) incorrectly instructing the jury on the law of entrapment, and 5) allowing evidence contrary to an order in limine excluding references to Mrs. Hardy's race.

We find it necessary to discuss only the first issue, since it is our conclusion the trial court should have granted Hardy's motion to dismiss his indictment because of irregularities in the grand jury selection process. Accordingly, we reverse.

The irregularities in the selection of the grand jury in this case has raised serious questions about the appearance of integrity in our system of justice. Whenever local courts stray from established statutory procedure, they risk both the rights of the defendant and the confidence of the citizenry in the criminal justice system.

1. For a discussion of the circumstances surrounding the appointment of this special prosecutor see the majority and dissenting opinions

In a nutshell, it appears from the record the three trial judges in Tippecanoe County were concerned about possible political corruption. The judges, moreover, had little faith in the elected prosecutor, James Kizer. Accordingly, they prepared a disqualification order to remove him from the investigation.[1] At a meeting with the judges on October 22, 1975, Kizer voluntarily signed the disqualification order:

"Comes now James A. Kizer, Prosecuting Attorney for the 23rd Judicial Circuit.

It appears to the Court that certain allegations have been publicly made concerning possible criminal conduct by public officials and concerning the possible commission of crimes which have not been properly investigated or prosecuted, and that further allegations have been publicly made that the said prosecuting attorney has been influenced in the conduct of his office by political considerations.

It further appears to the Court that the interests of justice require that said allegations be made the subject of police and grand jury investigation.

And now the said Prosecuting Attorney, in the interests of a full and free investigation of all said allegations, disqualifies himself from participating therein, and requests the Court to appoint a special prosecutor to assist the police and grand jury in the investigation of all said allegations and to conduct the prosecution of any criminal charges which may arise therefrom.

Entered this 22nd day of October, 1975.

/s/ Warren B. Thompson
        Warren B. Thompson, Judge
        Tippecanoe Circuit Court

/s/ Robert F. Munro
        Robert F. Munro, Judge
        Superior Court of Tippecanoe County

/s/ Jack A. King
        Jack A. King, Judge
        Superior Court No. 2 of Tippecanoe County

in *King v. State*, (1979) Ind.App., 397 N.E.2d 1260, 1274.

/s/  James A. Kizer

James A. Kizer, Prosecuting Attorney for the 23rd Judicial Circuit"

The same day, the judges appointed George Hanna as special prosecutor.

The grand jury was impaneled in January, 1976, primarily to assist the special prosecutor in his investigation of political corruption. The special prosecutor, under his authority to deal with "crimes which have not been properly investigated or prosecuted" by Kizer, also brought drug abuse cases to the grand jury's attention. Consequently, it indicted Hardy on February 11, 1976, on evidence he sold on November 20, 1975, several tablets of a prescription drug to an undercover police officer for $10.00.

In addition to the Hardy indictment, the grand jury returned a number of others, including an indictment for theft and burglary against Lewis Wireman, a former Lafayette city judge. Subsequently in *Wireman v. State*, (1981) Ind.App., 418 N.E.2d 1182 (Transfer pending), we held the grand jury which indicted Wireman was selected in a manner not in substantial compliance with the statutory requirements that jurors be selected in a random, impartial and nonpartisan manner. For that reason, we reversed Wireman's conviction and remanded with instructions to grant his motion to dismiss his indictment. We concluded that where

"there are numerous jury selection irregularities alleged in a politically-colored investigation, and that among such irregularities it is demonstrated the names for the grand jury in question had been drawn from a jury box which had not been purged for as many as six years, that during most of this six-year period names were chosen from politically-labeled voter lists, and that in selecting the names comprising the pool of prospective jurors the commissioners acted not in concert, but entirely on their own, substantial compliance with the appropriate statutory procedures has not been achieved."

Hardy now raises precisely the same issues as did Wireman. The record supports his contention that the grand jurors were selected for this politically sensitive investigation by the jury commissioners, acting individually, from voter registration rolls which listed the political affiliations of the prospective jurors. Moreover, contrary to statutory direction, the names for the grand jury were drawn from a jury box that had not been purged for a number of years. He also notes other irregularities, such as the failure to require oaths of the jury commissioners and the failure to properly secure the jury box.

The grand jurors which indicted Hardy are the same jurors which indicted Wireman, and the same factual irregularities are again properly before this court. That panel of jurors, which we found to be irregular in the indictment of the former city judge, can be no less irregular in its indictment of a university student. The authority and validity of a grand jury depends on the legality of its authorization, not on the kinds of cases or types of defendants it investigates. Here, the manifest opportunity for bias in the selection process of the grand jury already has cast a shadow of suspicion over the workings of a valuable judicial instrument, we will not darken it further by lamely attempting to distinguish a case which cannot be distinguished.

The errors alleged, were neither technical nor minor, but went to the heart of the statutory method of drawing jurors. That method "was devised for the purpose of putting selection beyond suspicion of advantage or favoritism and making the selection, as nearly as possible, random." *Owen v. State*, (1979) Ind., 396 N.E.2d 376, 379. "The major requirement should be that the system of selection is not arbitrary . . . and complete impartiality should be sought." *Shack v. State*, (1972) 259 Ind. 450, 459, 288 N.E.2d 155, 162.

Moreover, Hardy need not show prejudice or bad faith with respect to these irregularities to justify reversal. As our Supreme Court wrote in *Cross v. State*, (1979) Ind., 397 N.E.2d 265, 267–68:

"When a defendant fails to show lack of substantial compliance with statutory requirements, this Court will require a showing of prejudice to the defendant's rights. *Shack v. State, supra; Leonard v. State,* (1968) 249 Ind. 361, 232 N.E.2d 882. *However, when there is a lack of substantial compliance, the defendant need not show actual prejudice.*

'It seems to us that the proper construction is to hold that an accused, regardless of his guilt or innocence, has the right to insist that there be substantial compliance with [the statute], and if these provisions are not substantially complied with, his substantial rights are harmed.['] *Rudd v. State,* (1952) 231 Ind. 105, 111, 107 N.E.2d 168, 170.

Furthermore, Judge Emmert noted that: *'The only way this court has to enforce substantial compliance with the statutes on juries is to reverse when the issue is properly presented in the trial court and here.'* 231 Ind. at 113, 107 N.E.2d at 171." (Emphasis added.)

Since we have found the grand jury which indicted Hardy was selected in a manner not in substantial compliance with statutory requirements, we necessarily find Hardy's substantial rights were harmed.

We reverse and remand with instructions to grant Hardy's motion to dismiss his indictment.

STATON, J. (sitting by designation), concurs.

HOFFMAN, P. J. (sitting by designation), dissents with opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent. In setting out the grounds for my dissent herein, I must also state the reasons for my disagreement with the opinion of the Fourth District of this Court in *Wireman v. State* (1981), Ind.App., 418 N.E.2d 1182 (transfer pending).

The majority, as did the Fourth District in *Wireman,* finds a lack of substantial compliance with IC 1971, 33-4-5-2 (Burns Code Ed.). I fail to find a workable definition of "substantial compliance" in regard to this statute in either opinion.

The first step in determining whether there has been substantial compliance with statutory procedures is to ascertain the purpose of the statute. "The purpose behind IC 33-4-5-2 is to insure that the method used in selecting the jury is not arbitrary and that it does not result in the systematic exclusion of any group." *Beck v. State* (1981), Ind.App., 414 N.E.2d 970, at 972 *citing Shack v. State* (1972), 259 Ind. 450, 288 N.E.2d 155. In *Shack v. State, supra,* 259 Ind. at 459-460, 288 N.E.2d at 162, Justice Hunter, writing for the majority, declared:

"Strict random selection is not a requirement. The law requires that the commissioners use some discretion in the selection process. *See Harrison v. State* (1952), 231 Ind. 147, 106 N.E.2d 912. The major requirement should be that the system of selection is not arbitrary, see *Harrison, supra,* and complete impartiality should be sought. *See, State v. Bass* (1936), 210 Ind. 181, 1 N.E.2d 927. Thus, completely random selection is not a requirement as long as the system is impartial and not arbitrary. We should note, however, that the more random the selection process, the less will be the appearance of arbitrariness. Such a goal should be sought."

*See also Owen v. State* (1979), Ind., 396 N.E.2d 376. It is clear to me that a method of selection which does not systematically exclude any particular group, and is not arbitrary, is in substantial compliance with the statute. *Shack v. State, supra.* The mere fact that the procedures utilized in selection of the grand jury did not entirely comport with the statute should not be grounds for dismissal of an indictment absent a showing of prejudice.

In the present case, there is no evidence that any group was systematically excluded. The majority implies that the fact that the jury commissioners, acting individually, selected names from a voter's registration list which contained the political party affiliation of each listed person, raises a possibil-

ity of a systematic exclusion of members of the opposing party. I do not share in this view. An optimist would presume that a person's political preferences would have no bearing on a jury commissioner's performance of his duty. Even the most cynical among us must admit however that the requirement that the two jury commissioners be of opposing political parties, IC 1971, 33–4–5–1, together with the fact that the names of the potential jurors were placed into the jury box with both commissioners and the clerk present, would foreclose any possibility that members of a political group were systematically excluded from grand jury duty.

I also do not believe that the failure to purge the jury box poses a significant risk to the random selection of the grand jury. Although there is a possibility that some names may appear in the box more than once, there is no indication that this was the result of favoritism or partiality. The jury box contained numerous names. The names were drawn from the box with both jury commissioners and the clerk present. I believe that this procedure, though not ideal, does guarantee the selection of the grand jurors in a random, impartial, and nonpartisan manner.

Because there has been no showing that the procedures utilized in selecting the grand jury systematically excluded any group, or were arbitrary, it must be concluded that there was substantial compliance with the statute. "When a defendant fails to show lack of substantial compliance with statutory requirements, this Court will require a showing of prejudice to the defendant's rights." *Cross v. State* (1979), Ind., 397 N.E.2d 265, 267–268 citing *Shack v. State, supra; Leonard v. State* (1968), 249 Ind. 361, 232 N.E.2d 882. Hardy has failed to sustain his burden of showing prejudice. I would therefore affirm the conviction.